Essex Public Road Board v. Skinkle.

THE STATE, THE ESSEX PUBLIC ROAD BOARD, PLAINTIFF IN ERROR, v. JACOB SKINKLE, DEFENDANT IN ERROR.

1. The act entitled " An act to authorize the compromising or settling, by arbitration, of any tax or assessment laid by any public road board in this state," approved March 31st, 1882, is constitutional.
2. The said act is retrospective in its character.
3. Either the owner of land or the mortgagee may apply under the act.
4. A case was made before the justice to whom the application was made, which justified him in appointing arbitrators.
5. The proceedings and report of the arbitrators are legal.
6. There is no difficulty in carrying out the provisions of said act.

On error to the Supreme Court. For the opinion of the Supreme Court, see *ante, p.* 65.

For the plaintiff in error, *John W. Taylor.*

PRELIMINARY STATEMENT.

This case arose out of an application, by petition, on behalf of the defendant in error, under the act entitled " An act to authorize the compromising or settling, by arbitration, of any tax or assessment laid by any public road board in this state," approved March 31st, 1882 (*Pamph. L., p.* 256), for the appointment, by a justice of the Supreme Court, of three arbitrators, to settle and adjust the matter in difference between the defendant in error and the prosecutor, relative to certain assessments for benefits, imposed under the act incorporating the prosecutor, and the supplements thereto, upon premises at the time owned by Caleb B. Headley, and since conveyed to the defendant in error.

There were three different assessments, as follows :
1. One ratified April 21st, 1873, for the benefits of laying out and widening Springfield avenue, for $940 00
2. One on account of benefits of the change of grade of said avenue, ratified October 7th, 1878, for 104 40
3. The other for paving said avenue, made October 13th, 1873, for......... ...... ...... ......... ........ 890 74

For the non-payment of the first above mentioned assessment, the premises were sold December 26th, 1876, for the term of fifty years, to the prosecutor, for $1,144.40, the amount due thereon, and a certificate of sale executed to it, bearing date December 30th, 1876, and recorded January 5th, 1877.

For the non-payment of the secondly above mentioned assessment, the premises were sold September 5th, 1881, for the term of fifty years, to the prosecutor, for $184.81, the amount due thereon, and a certificate of sale executed to it, bearing date September 5th, 1881, and recorded January 4th, 1882.

The sales to the prosecutor were made by virtue of a supplement to the act incorporating it, approved March 31st, 1875 (*Pamph. L., p.* 420), the fifth section of which enacts: "That such lands and real estate (assessed for benefits) as are not bid for when offered for sale or for re-sale, pursuant to the fifteenth section of the act to which this is a further supplement, shall be struck off to said board, by its corporate name, for the term of fifty years, and may be held and sold, assigned and disposed of by said board for the use of the county, with all the rights and privileges of a purchaser at such sale, and subject to the same conditions and limitations."

### THE QUESTIONS INVOLVED.

There were five questions of law involved in the case, which were certified to be argued before the Supreme Court for its advisory opinion, viz. :

*First.* Whether the act is unconstitutional.

*Second.* Whether a mortgagee, who has bought the property covered by his mortgage, can apply under the act.

*Third.* Whether the act is so imperfect as to be unenforceable.

*Fourth.* Whether the act is retrospective as regards property sold before its passage.

*Fifth.* What considerations are to guide the judge in deciding whether it is a proper case for arbitration.

Essex Public Road Board v. Skinkle.

These questions, having been argued before the Supreme Court, and its advisory opinion certified to the justice to whom the petition had been presented, judgment was rendered in conformity thereto, and, arbitrators having been appointed in pursuance of said petition, and having made their report, the same was thereupon ordered to be filed, and the costs of the petitioner ordered to be paid by the respondent, the prosecutor.

The petition, report, orders and all the proceedings were brought before the Supreme Court for review, and were affirmed by its judgment.

This writ of error is brought to procure a reversal of that judgment.

I. The act under which the proceedings were had is unconstitutional in the respects and for the reasons following:

*First.* It violates the constitutional requirement (Art. IV., § 7, ¶ 4) that "every law shall embrace but one object, and that shall be expressed in its title."

The act in question (*Pamph. L.* 1882, *p.* 256) is entitled "An act to authorize the compromising or settling, by arbitration, of any tax or assessment laid by any public road board in this state."

1. It will be noticed that the object of the act, as expressed in its title, is simply to "authorize" or permit the compromise of taxes and assessments, &c.

"To authorize" is "to clothe with authority, warrant, or legal power; to give a right to act; to empower; as to authorize commissioners to settle the boundary of the state." *Webster.*

The end, object or scope of the act, as declared in its title, is solely to enable or empower the public road board, on the one hand, and the party assessed, on the other, to compromise their differences, "by arbitration," as the prescribed means.

There is, in the title, no intimation of constraint, coercion or compulsion; nothing but permission.

The title purports, indeed, to confer authority, but only upon the parties, to enable them to act.

2. Again, the authority to compromise is limited by the title

to a single subject matter, viz., a tax or assessment—obviously here meaning but one and the same thing.

3. Now, looking into the provisions of the act, consisting of four sections, it will be noticed that it embraces two objects, only one of which, viz., that contained in the first section, is expressed in the title ; the other object embraced in the remaining sections, being not to authorize a compromise, but to compel one of the parties, against its will and judgment, to submit its rights to the award of arbitrators, in the selection of which it has no hand.

The second and real object of the act is not only unexpressed in the title, but is essentially different from, and alien and hostile to, that expressed in the title.

The ostensible object of the act is to authorize a compromise, while the real object of the act is to prevent a compromise, by putting one of the parties under compulsion and coercion, and at the mercy of an arbitrary and odious tribunal.

Is there any element of the idea of compromise here?

" Compromise " is " an amicable agreement between parties, in controversy, to settle their differences by mutual concessions." *Webster.*

Does this object, embraced in the act, but unexpressed in the title, imply or contemplate either " amicable agreement " or " mutual concessions between the parties ? "

Not at all, but quite the contrary.

4. Besides, it will be observed that the subject of the so-called " compromise," limited, in the title, to a " tax or assessment," embraces, in the body of the act, not only a lien or encumbrance upon land, but also a term of years in land.

I say " term of years," for one of the objects of the act, and the special aim of this proceeding, is to divest the public road board of its interest in land sold to it, in payment and discharge of the assessments imposed, and for which it holds certificates of sale covering a term of fifty years.

The assessments are, therefore, paid and satisfied, and the title is held by the road board free from any lien or encumbrance. If there is anything to " compromise " in this case,

it is not the " tax or assessment," but the title held under the sale for the tax or assessment, and as different as possible from it.

The position here taken in respect to the act scarcely needs any citation.

It is too plain to require argument or authority, that the object not expressed in the title is neither kindred nor incidental to that which is expressed.

Compulsion or coercion is not permission, nor an incident of it, nor involved in it.

The title of the act is grossly deceptive and misleading, and, doubtless, deceived and misled those who voted for it.

The violation of the constitutional provision is too plain to need argument or authority. I will refer only to the following authorities. *Cooley's Con. Lim.* (5th ed.) 170, *et seq ; Sedgwick's Stat. and Con. Const.* (2d ed.) 517, *et seq.*

In *Rader* v. *Township of Union*, 10 *Vroom* 509, as in nearly all the cases on this subject, the constitutional provision is violated by the inclusion of a subject (rather than an object), strictly speaking, and it is not always readily manifest whether the subject covertly embraced in the body of the act is within, or incidental to, the " object " expressed in the title ; but the object of the act in question, as expressed in the title, is to accomplish a single definite thing, viz., to authorize an amicable settlement by and between the parties, of an assessment, by mutual concessions ; whereas the real, but covert object is the compulsory adjustment, against the will of one of the parties, not only of an assessment, but of a claim of title to lands.

*Second.* The act in question is a " law impairing the obligation of contracts," and forbidden by our constitution, as well as by that of the United States.

It may not also be a literal violation of the provision that " private property shall not be taken for public use without just compensation," nor of the other provision that " individuals or private corporations shall not be authorized to take private property for public use without just compensation first

made to the owner," because those provisions forbid the taking of private property for public use; whereas the act in question authorizes the taking of the private property for private use, and is not expressly forbidden, for the reason that it is not legislation, nor within the scope of legislative power, but is robbery, pure and simple.

By the supplementary act quoted in the former part of this brief, it is enacted that " lands and real estate " struck off and sold to the board " may be held and sold, assigned and disposed of by said board for the use of the county, with all the rights and privileges of a purchaser at such sale."

Under this enactment the board became vested " with all. the rights and privileges of a purchaser," for fifty years, of the land in question, by virtue of a contract executed.

The real object of this proceeding under the act in question is to impair and annul the obligation of that contract, and take, for the private use of the petitioner, the property so vested in the board.

It is admitted that a municipal or public corporation may be abolished or modified at any time, but so may private corporations of recent creation. It is admitted, moreover, that in the line of political legislation the power of the legislature is almost unlimited in respect to municipal or public corporations; but it is insisted, nevertheless, that such corporations, so long as they are permitted to exist, are under the protection of the constitutional provision against enactments " impairing the obligation of contracts," so far, at least, as regards what may be termed their private property.

" It (the municipal corporation) can hold and own property only for corporate purposes, and its powers are liable, at any time, to be so modified by legislation as to render the property no longer available. Moreover, the charter rights may be altogether taken away; and, in that case, the legislature has deprived the corporation of its property by depriving it of corporate capacity to hold it. * * * But whether the state can directly interfere, and take away the corporate property, or convert it to other uses than those for which it was.

procured, or whether, on repealing a charter of incorporation, it can take to itself the corporate property, and dispose of it at its discretion, are different questions from any raised by the indirect and incidental interference referred to." *Cooley's Con. Lim.* (*5th ed.*) 290 ; *Id.* 290, 291.

The same author, referring to cases in the Supreme Court of the United States, says : "They draw a distinction between the political rights and privileges conferred on corporations, and which are not vested rights in any sense, implying constitutional permanence and such rights in property as the corporation acquires, and which, in the view of these decisions, are protected by the same reasons which shield similar rights in individuals." *Id.* 291.

" The rule about the subject we take to be this : When corporate powers are conferred there is an implied contract between the state and the corporators that the property which they are given the capacity to acquire for corporate purposes under their charter, shall not be taken from them and appropriated to other uses. If the state grants property to the corporation, the grant is an executed contract, which cannot be revoked. The rights acquired, either by such grants or by any other legitimate mode in which such a corporation can acquire property, are vested, and cannot be taken away." *Id.* 292. See *Wade's Retroactive Laws,* § 56. See *Grogan* v. *San Francisco,* 18 *Cal.* 590 (1861); *People* v. *Batcheller,* 53 *N. Y.* 128, 140, 141 (1873) ; *People* v. *Mayor, &c., of Chicago,* 51 *Ill.* 17 (1869); *S. C.,* 2 *Am. Rep.* 278 ; *Town of Milwaukee* v. *City of Milwaukee,* 12 *Wis.* 83 (1860); *People* v. *Tappan,* 29 *Wis.* 664 (1872); *People* v. *Hurlbut,* 24 *Mich.* 44 (1872); *People* v. *Common Council of Detroit,* 28 *Id.* 228, 237, 242 (1873); *Benson* v. *Mayor, &c., of New York,* 10 *Barb.* 223, 240, 243 (1850); *Milam County* v. *Bateman,* 54 *Tex.* 153 (1880); *People* v. *Porter,* 26 *Hun* 622 (1882); *Montpelier* v. *East Montpelier,* 29 *Vt.* 12 (1856); *Atkyns* v. *Town of Randolph,* 31 *Vt.* 226 (1858); *Windham* v. *Portland,* 4 *Mass.* 390 ; *Hampshire* v. *Franklin,* 16 *Mass.*

76; *Bowdoinham* v. *Richmond*, 6 *Me.* 112; 1 *Dill. on Mun. Corp.* (3d ed.), § 68, *note* 3, § 69.

"The power of making bargains for individuals has not been delegated to any branch of the government."

Per Bronson, J., in *Taylor* v. *Porter*, 4 *Hill* 143 : "They [municipal corporations] may also be empowered to take and hold private property for municipal uses ; and such property is invested with the security of other private rights." 2 *Kent's Com.* 275.

"While the legislative power (to enlarge, restrain, or even destroy municipal corporations, as the public interest may require) may be exercised over public and municipal corporations, it has as uniformly been held that towns and other public corporations may have private rights and interests vested in them under their charter ; and, as to those rights, they are to be regarded and protected the same as if they were the rights and interests of individuals, or of private corporations, and grants of property in trust for other than corporate and municipal use (that is, as we understand, for private, as distinguished from public purposes) are no more the subject of legislative control than are the private and vested rights of individuals." *Montpelier* v. *East Montpelier*, 29 *Vt.* 12 (1856.)

"Counties, in their relation toward the state, may be viewed in a two-fold aspect ; one which pertains to their political rights and privileges, the other to their rights of property.

"Over the former, the legislature, as the representative of state sovereignty, can exercise absolute power, unless restricted by the organic law. If it could not exercise such power over the delegated political rights and privileges of counties which are sub-divisions of state governmental authority, we might have a system of petty discordant governments within a government, without unity of design or action.

"Hence, the political rights and privileges delegated to counties are not within the constitutional prohibitions against retroactive laws and those which impair vested rights. *Cooley's Con. Lim.* 237 ; *People* v. *Morris*, 13 *Wend.* 331.

"A different principle, however, obtains as regards the rights of counties to property which they may acquire. Such rights, as a general rule, are protected by the same constitutional guaranties which shield the property of individuals. *Cooley's Con. Lim.* 237, 277; *Grogan* v. *San Francisco*, 18 *Cal.* 590.

"Even though the state itself may have donated the property, it thereby becomes such a vested right as will be protected. *Wade on Retroactive Laws*, § 56; *Grogan* v. *San Francisco*, 18 *Cal.* 590." *Milan County* v. *Bateman*, 54 *Tex.* 153 (1880).

See an able and learned article, entitled "Changes in public corporations affecting property and rights of creditors," in 21 *Am. L. Rev.* (Jan., 1887) 14.

II. The petitioner is not entitled to relief under the act.

It is confidently insisted that one who (like the petitioner), as mortgagee or otherwise, has purchased the assessed premises subject to the assessment, is not entitled to the relief contemplated by the act. In purchasing the property, with full knowledge of the assessment, he presumably took into consideration the encumbrance, made allowance for it, and paid a correspondingly less price for the same, that is to say, paid merely what he deemed the premises worth, over and above the encumbrance. He made his own bargain, took the property *cum onore*, and has no claim to relief from self-imposed or self-assumed burdens. *Volenti non fit injuria.*

III. The act is so imperfect in the matter of provision for a mode or principle to govern the arbitrators, when appointed, as not to be capable of being carried out.

The imperfections of the act, in regard to "mode or principle," are glaring.

1. The arbitrators are to be sworn to the "faithful performance of their duties and the trust reposed in them as arbitrators."

2. They are required to "view the land and real estate" assessed.

3. They are required to "hear all parties, or their witnesses, and, taking into consideration all taxes, &c., of every nature whatsoever, and the value of the land and real estate in proportion to the taxes, &c., proceed to fix and adjust a specific sum or amount, to be paid by the owner, &c., so petitioning, in full settlement and discharge of the tax," &c.

4. They are to "proceed with all reasonable dispatch," and to make their final report within sixty days, "which, when presented, shall be ordered filed with the clerk of the county, there to remain of record."

The report, of course, is what "specific sum or amount" is to be paid by the owner in discharge of the assessment.

Their duties are (1) to swear, (2) to view, (3) to hear, and (4) to report the result; but there is an utter absence of any "provision for a mode or principle to govern" them.

When it is considered what careful, elaborate and minute provisions were made for the guidance and regulation of the procedure of the officers who made the assessment thus dealt with by these arbitrators, the *hocus pocus* operations of the latter seem to be a mockery and a travesty of justice, and there is no appeal—no review provided.

IV. "The act is not retrospective, as regards property sold before it was passed."

The second and subsequent sections of the act depend upon a failure to compromise under the first section; and the power to compromise is limited to "assessments, &c., that may have been or may hereafter be laid or imposed."

The expression "may have been," as well as "may be" (as used in the act), may relate to future time. We say an event "may happen," meaning that it possibly will happen. So we may say an event "may have happened," meaning that it possibly will have happened—on or before a certain future time.

"One of the cardinal rules by which courts are governed in interpreting statutes is that they must be construed as prospective in every instance, except where the legislative intent

that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively." *Wade on Retroactive Laws*, § 34.

" Every reasonable doubt as to the intention of the law maker is resolved against, rather than in favor of the retroactive operation of the statute." *Id.*, § 35.

" Words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot otherwise be satisfied." *Williamson* v. *N. J. R. Co.*, 2 *Stew. Eq.* 311. See, also, *State, Alden, pros.*, v. *Newark*, 11 *Vroom* 92 ; *Morris Aqueduct* ads. *Jones*, 7 *Vroom* 206, 213 ; *Sedgwick on Stat. & Con. Const.* (2d ed.) 160, *et seq.*, and notes.

The act in question can have a full prospective operation, and the language of it does not necessitate a retrospective effect.

V. There are " no considerations to guide the judge in deciding whether it is a proper case for arbitration."

Certainly there is nothing in the act to indicate what considerations are to guide either the judge or the arbitrators. The whole proceeding is essentially arbitrary, and the judge and the arbitrators are as untrammeled by rule or principle as an oriental despot.  It is alien to our law and constitution, and a disgrace to our civilization.

VI. But, assuming that the statute is void, and applicable to the case of the petitioner, the proceedings, report and order had and made thereunder, or under color thereof, were irregular, and not in conformity to the statute.

1. The third section of the act, under which the proceeding was instituted, requires the arbitrators, " after hearing all parties and witnesses, and taking into consideration all taxes, assessments and impositions of every nature whatsoever, and the value of the land and real estate in proportion to the taxes and assessments against the same, to proceed to fix and adjust

the amount to be paid by such owner," &c.    *Pamph. L.* 1882, *p.* 256, § 3.

(*a*) There was a waiver of a consideration of the taxes levied on the said property, by the township of Clinton, but of nothing further, and the arbitrators should, in obedience to the act, have taken into consideration not only the assessments affecting the property in question, but also all assessments for the same improvement imposed by the board on all the lands assessed.

This is the literal requirement of the arbitration act, and a failure to observe it would disturb the principle of equality and proportion on which the original assessment of lots within' the assessment district was based.

(*b*) It cannot be presumed that in authorizing a change in the amount assessed on one lot in the district the legislature intended to sanction a violation of the rule of proportion and equality—the very foundation and life of an assessment.

2. The said arbitrators, in their proceedings and report, disregarded and violated the provisions of the act constituting the Essex public road board, and the supplements thereto.

(*a*) They violated the provision requiring the assessment of the different lots in the assessment district to be proportionate.    *Pamph. L.* 1870, *p.* 181, § 13 ; *Road Board acts, pl.* 36.

(*b*) They do not show that the sum fixed ($840) was equal to the benefits conferred.

They determined " that the benefits conferred upon said property by said improvements amount to the said sum of $840."

Undoubtedly they do, and probably much more than that sum, judging from the amount originally assessed.

They should have shown that the benefits did not exceed that sum.

" The right of the road board is to levy and collect the assessment in proportion to benefits."    *Skinkle* v. *Essex Public Road Board,* 18 *Vroom* 93.

(*c*) Merely saying that in fixing the sum they acted "with

a view to charge the said property with, and to make said assessments conform in amount to the benefits conferred," does not come up to the requirements of the law, as construed in the case cited.

(d) They must show not merely that their views were correct, but also that their determination conformed to those views, and that it was in accordance with the requirements of the law ; in other words, that their acts were legal.

For the errors mentioned, the judgment below should be reversed.

For the defendant, *J. Frank Fort.*

I. The first ground on which reversal is asked is—

1. Because the statute under color whereof said proceedings were had, and said report and order thereon were made, is unconstitutional and void.

In what the unconstitutionality consists we are not advised. The statute referred to is entitled "An act to authorize the compromising or settling, by arbitration, of any tax or assessment laid by any public road board in this state." *Pamph. L.* 1882, *p.* 256.

On the questions originally certified by the Circuit, it will be seen that the first question determined by the Supreme was this one of constitutionality.

Opinion of Justice Van Syckel, 20 *Vroom* 65.

### CONSTITUTIONALITY.

It will be contended that the act is unconstitutional as an act taking property from a municipal corporation, without doing it as an exercise of eminent domain.

This raises the question whether the legislature can, in any case, take or control the public property of a municipal corporation.

The state constitution reads, at paragraph 16, article I.: "Private property shall not be taken for public use without just compensation."

And at paragraph 8, section 7, article IV., that "individu-

als or private corporations shall not be authorized to take private property for public use, without just compensation first made to the owners."

Neither of these provisions can be said to have any application to the statute in question.

Both of these provisions apply to the compensating of the private owner of property for property taken from him by the public, or by a private individual or corporation, with the authority of the state, for some public or *quasi* public purpose.

The doctrine of eminent domain, it seems to me, has no relevancy to the statute under discussion, and can, in no sense, affect this cause.

### THE ROAD BOARD A PUBLIC CORPORATION.

The Essex public road board is undoubtedly a *quasi* public municipal corporation. It has corporate powers, *sub modo*, and for certain specified purposes. *Angell & Ames on Corp.*, § 23; 2 *Kent's Com.* 221; *Jansel* v. *Ostrander*, 1 *Cow.* 670; *North Hemstead* v. *Hemstead*, 2 *Wend.* 109; *Dill. on Mun. Corp.*, § 10.

Boards of commissions of roads are *quasi* public corporations. *Com. Roads* v. *McPherson*, 1 *Speer* 218.

Public corporations are such as are established for public purposes exclusively, that is, purposes connected with civil or local government. *Dill. on Mun. Corp.*, § 30.

### NO VESTED RIGHTS IN TAXES DUE MUNICIPALITIES.

A public corporation has no vested rights in fines, duties or taxes directed to be paid to it, nor in money consideration due to it for privileges granted by it. The legislature may release them by a law repealing or otherwise. *State* v. *Railroad Co.*, 12 *Gill & Johns.* 390. Same case affirmed in United States Supreme Court, 3 *How.* 534; *Coles* v. *Madison County*, *Breese* 115; *Holiday* v. *People*, 5 *Gilm.* 216; *Connor* v. *Barb*, 1 *Mo.* 235; *Rankin* v. *Beaird*, *Breese* 123.

A provision in an act consolidating cities that the new part shall not be taxed on more than its own debts incurred prior

to annexation, and subsequently contracted debts, held not to be a contract, and that the legislature could afterwards repeal the exemption and tax for the old debts of the old city.   *Taylor* v. *New Orleans*, 12 *La. Ann.* 515; *People* v. *Hill*, 2 *Cal.* 97.

### LEGISLATURE SUPREME OVER TAXATION.

There is no limitation to the supremacy of the legislature over municipal corporations, unless found in the national or state constitutions.   *Dill. on Mun. Corp*, § 38.

The authority of the legislature over the property of a municipal corporation is quite without limit.   *Darlington* v. *New York*, 31 *N. Y.* 164.

The very greatest length that any case goes as to any limit of control of the legislature over municipal property is the distinction that some cases make between the private property of municipal corporations and their public property.   That is that which has come by private grant or bequest or national or state legislative donation, and public property that derived by taxation or public imposition of any kind.   Such private property some of the courts have seemed to think cannot be taken from a municipality by legislative power, but none have ever so said as to the public property.   Even this limited doctrine is denied in the strongest terms by Chief Justice Denio in *Darlington* v. *New York*, 31 *N. Y.* 164, 196.   See *Dill. on Mun. Corp.*, § 40; 2 *Kent's Com.* 305.

The legislature may take the streets of a city for a railway or other purpose without compensation to the municipality. *Dill. on Mun. Corp.*, § 518, *note* 1; *O'Connor* v. *Pittsburg*, 18 *Penna. St.* 187 (Chief Justice Gibson); *Trenton R. R. Case*, 6 *Whart.* 28.

Taxes and assessments are public property.

Dillon says "the taxing power of the state consists in its authority to levy and collect taxes and assessments, which are in the nature of special taxes; and taxes [including in the term assessments] are burthens or charges imposed by the legislature, or under its authority, upon persons or property, to raise money for public, as distinguished from private pur-

poses, or to accomplish some end or object, public in its nature." *Hanson* v. *Vernon*, 27 *Iowa* 28 ; *People* v. *McCreery*, 34 *Cal.* 432.

A tax for a private purpose would be unconstitutional. Chief Justice Black, in *Sharpless* v. *Philadelphia*, 21 *Penna. St.* 147.

There can be no doubt of the power of the legislature to vacate an assessment for local improvements, and impose the burthen of the whole upon general taxation.

The legislature imposed the assessment under which the property in question was sold by the prosecutors. Can they vacate the sale made under their own authority in whole or part, or, in other words, can they repeal the law under which the assessment was made, and avoid the assessment ?

There can be no question about this. That they can is decided in this state. *Dixon, pros.,* v. *Jersey City,* 8 *Vroom* 39.

If the legislature can vacate the whole assessment, can they not provide for its partial removal by the process in this act under judicial direction ? A municipality cannot impose a tax or assessment, except with express legislative authority. The municipality has no vested rights in tax liens, or property sold for taxes, and bought in by the municipality itself, and the legislature can provide for the relief of the citizens against unjust taxation, or can, by its own act, if it so direct, vacate all taxes laid by any municipality.

ACT ONLY RELIEVES UNJUST BURTHENS.

Even if this were not the case, it cannot be truly said that these proceedings take away the property of the municipality. It only relieves the citizen against what, in equity, seems to the court an unjust burthen. The road board loses nothing. It, as such, has no vested right in its assessments or assessment liens. They belong to the public, whom the legislature represent, and if the legislature, speaking for the whole public, removes a burthen from an individual, and places it upon the public at large, can it be pretended that it is unconstitutional ?

Essex Public Road Board v. Skinkle.

DOES THIS ACT DESTROY OBLIGATIONS OF CONTRACTS?

It was insisted that the act was unconstitutional, on the ground that it destroyed the obligations of contracts. *State Const., art.* IV., § 7, ¶ 3.

This cannot be maintained. Taxes are not a contract. They are an impost levied by the state. There is no mutuality about taxation. *Camden* v. *Allen*, 2 *Dutcher* 398.

No question of the violation of the obligations of contracts can be raised in such a case as this, unless the rights of third parties intervene and are affected by the law. There appears no evidence of the interest of any one in these cases other than the prosecutor, and it is solely a question between the road board and legislative power.

The contention that the act under review divests the prosecutors of any property, or of a term of years in lands sold to them, thereby destroying the obligations of any contract, is not true. The act of March 31st, 1875, empowers the prosecutors to buy in property for assessments in their corporate name when sold under the fifteenth section of the act incorporating them. See *Pamph. L.* 1875, *p.* 420.

The fifteenth section of the act incorporating the respondents is a long section, providing for a sale of property for unpaid assessments, and the issuance of a certificate of sale to the purchaser, to be recorded in the office of the respondents. At the end of three years such purchaser can procure a declaration of sale, and have it recorded at the respondent's office and at the register's office of the county. The language of the section at this point is : " That until the recording of such declaration, the time for redeeming said lands and real estate as aforesaid shall remain open, notwithstanding said term of three years may have expired." *Pamph. L.* 1869, *p.* 957.

A further question may be raised on this act, viz., that while it is true the respondents may buy at their own sale, and take and hold a certificate of sale, that does not authorize them to issue to themselves a declaration of sale. That is not in this case, however, as it is undisputed that none has ever been issued. Can a municipal corporation, given power by

statute to buy at its own sale, for the purpose of perpetuating a lien for taxes or assessments, claim, after the purchase, to have any better right against a taxpayer, or the legislative power of repeal or control than it had before the sale? It seems as if this was so absurd as to need no comment. The municipality gets no greater right against the taxpayer than it had before the sale, even, in my judgment, if a declaration of sale can be, and actually should be, issued to it by itself, unless it be to recover the added costs and expenses of the several sales and evidences thereof. The municipality parts with no new consideration on the purchase whereby it acquires any greater rights.

### IS THE TITLE OF THE ACT OBJECTIONABLE?

Counsel of the prosecutor in his brief virtually abandons his position as to unconstitutionality, except as to the question of the title of the act.

This ground has, it seems to me, even less foundation than either of the others. If the act construed in Richards v. Hammer was not unconstitutional for this reason, surely this is not. *Richards* v. *Hammer*, 13 *Vroom* 435; *Payne* v. *Mahon*, 15 *Vroom* 213.

The title of the act in question reads: "An act to authorize the compromising or settlement, by arbitration, of any tax or assessment laid by any public road board in this state."

I cannot see any difficulty with the body of this act containing but one object, and that being expressed in its title.

The object is to compromise or settle, by arbitration, &c. The first section provides for a compromise by agreement, or, failing in this, then the second section provides for an arbitration settlement under the direction of a court, founded upon the failure to agree under the first section. An act is certainly not unconstitutional on this ground that is entitled "An act to settle by arbitration," and in its body provides simply for the manner of appointing the arbiters, and directs their conduct when appointed.

The counsel says: "The ostensible object of the act is to

authorize a compromise; while the real object of the act is to prevent a compromise by putting one of the parties under compulsion and coercion, and at the mercy of an arbitrary and odious tribunal."

This quotation seems inexplicable. The tribunal at whose mercy the respondents are put is a court of justice, which, to them and their land confiscation schemes, may be an odious tribunal, in the sense that Shylock, no doubt, thought the decision unjust that took his head if he drew one drop of blood; but it remained for the counsel of the prosecutor to first say that a justice of the Supreme Court of this state, vested with equitable discretion to put in motion arbitration machinery to render justice between a taxpayer and the public, was an " odious tribunal."

On the question of the power of the legislature to pass the act in question, as an act taking from the respondents their property, I cannot see that the counsel has cited any authority I cannot accede to. If the municipal corporation can hold assessment liens, whether under a certificate of sale or otherwise, as private property, and not public, then that is the end of this argument. Private property of a municipality cannot be controlled by the legislature, but public property can. Every case cited by the respondents' counsel is as to the taking of private property by the legislature, that is, property coming by gift, grant, devise or otherwise. I am content to stand on the doctrine of *Dill. on Mun. Corp.*, and *Darlington* v. *New York*, 31 *N. Y.* 164; *State* v. *Railroad*, 3 *How.* 534.

#### CAN A MORTGAGEE APPLY UNDER THE ACT?

II. It is contended that a mortgagee, who has bought property covered by his mortgage, cannot apply under the provisions of this act.

This must be settled by the construction of the act. The language is too clear for controversy. It authorizes the owner or mortgagee to take these proceedings. The act has reference to the relation of the applicant to the property under assess-

ment at the time of the application to the board for compromise under the first section of the act.

Can the fact that one was mortgagee when the assessments were laid, and subsequently became owner by foreclosure or otherwise, vitiate his right under this law to apply for relief? Does his cutting off even the equity of redemption of another in the property, and securing the fee absolutely, decrease his claim, or remove his right to apply for relief?

It seems absurd to suggest such a proposition. All tax laws are construed liberally for the benefit of the citizen. Any other construction than this would be a forced one, and of a most technical character. *Paulison* v. *Taylor*, 6 *Vroom* 184.

### QUESTIONS OF CONSTRUCTION.

On the hearing in the Supreme Court on the case certified the following questions were raised:

1. Whether the act is so imperfect in its mode or principle to govern the arbitrators as to be incapable of being carried out.

2. Whether the act was retrospective.

3. What considerations were to guide the judge in deciding whether a proper case for arbitration.

All these points are so completely overthrown by the opinion of the Supreme Court that I shall not re-argue them here; simply content myself with citing that opinion. *Skinkle* v. *Essex Public Road Board*, 18 *Vroom* 93.

### REGULARITY OF ARBITRATORS' PROCEEDINGS.

III. It is objected to the report of the arbitrators that has been sustained by the Supreme Court that it is not to be upheld for the following reasons:

1. That the proceedings and report are not regular, or in accordance with the statute.

2. That the arbitrators disregarded and violated the provisions of the Road Board act in their proceedings.

3. Because the amount fixed by the arbitrators is not equal

to benefits, and does not purport to be made up on that prin-
·ciple.

The proceedings of the court in the appointment of the
arbitrators, their proceedings and report, and the order of
court confirming same and ordering it filed, are in the printed
case, and they seem to me to be so in exact conformity with
the requirements of the statute that the best proof thereof is a
reference to the record. In addition to this, the opinion of
Mr. Justice Van Syckel on this point is conclusive.

In what said arbitrators violated the provisions of the
Essex Road Board act, stated in the third reason, or with
what they had to do with that act, is incomprehensible. They
were appointed under, controlled by, and should follow only
the act of March 31st, 1882, authorizing these proceedings to
be taken. The act of 1882 is not a supplement to any other
act. It is a complete procedure within itself, and where it
applies, and is put in operation by a justice of the Supreme
·Court, is all controlling over the subject matter, and the mode
and manner of its treatment. *Pamph. L.* 1882, *p.* 256.

On the question of benefits the arbitrators' report says :
·" And we did thereupon fix and adjust the specific sum or
amount to be paid by the said Jacob Skinkle, petitioner afore-
said, in full settlement and discharge of the said assessments,
and each of them, as stated in the petitioner's petition, at the
sum or amount of eight hundred and forty dollars ($840), and
we do hereby report and certify that we have so fixed said
sum or amount after a careful examination of said land and
real estate, and said public improvements for which said
assessments were laid or imposed, and the evidence before us,
with a view to charge said property with, and to make said
assessments conform in amount to the benefits conferred, and
do hereby determine that the benefits conferred upon said
property by said improvements amount to the said sum of
eight hundred and forty dollars ($840), as aforesaid."·

What language could the arbitrators use in their report
more specific than this ?

In addition to this, the minutes of the arbitrators, under

date of January 2d, 1886, show that the arbitrators did fix the sum of $840, as an amount equal to the whole benefit conferred by the several improvements in question. These minutes read : " After full consideration of the case, as presented, the sum of $840 was unanimously agreed upon as the amount of benefit the property of Jacob Skinkle derived from the road board improvements in question."

If the words, " as the amount of benefits the property derived from the road board improvements," do not mean the whole benefit, what words could convey such a meaning ?

It were a waste of time to discuss any question of irregularity.

### COSTS.

IV. It is contended that the order of Mr. Justice Depue, awarding costs to be paid by the prosecutor, is not legal.

The authority of the court to so do is clear as to arbitrators' fees. *Pamph. L.* 1882, *p.* 258, § 4.

The right of a justice of the Supreme Court to order the costs of the prosecuting party paid on a case certified, is to be overthrown for the first time in this case, if the objection here raised shall be sustained. All the notice that the Supreme Court took of this objection was to quote its language in relation to it, thus : " Nor does any error appear in the order of the judge in regard to costs."

The act under consideration before the court is one of that class of acts which wise state policy has dictated as a necessity in municipalities in this state.

The legislature have provided the mode of relief fixed in the act for the petitioner and others in like case suffering. They have thrown the safeguards of a court around the initiating of the proceedings for arbitrament. They have given the judge the discretion about granting the application, from which there can be no appeal. They have fixed it so that the judge can impose all the costs of the application upon the property owner ; they have, in every way, guarded the public authorities against injury, owing to the act. They have first granted the respondents power to compromise a bad case

themselves, and only given the court power where they refuse to do so, or to attempt to do so. The law is a most beneficent and just one, and should be upheld, if possible. It is as right and just as the " Martin act," and on the same principle.

This is a most meritorious case. The evidence before the arbitrators shows clearly that the property is assessed for over three times its total value. It has been confiscated by the public. The present award is almost, or quite its full value, and, with the taxes still against the property, the public liens will still equal, if not exceed its full value.

This report is evidently just. The arbitrators are three as discreet and judicious citizens as could have been appointed by the court. They are thoroughly conversant with these improvements, knew the property before, at the time of, and since the improvements were made they personally examined, gave full hearing, and carefully considered the evidence, and have reached a conclusion which the court should, at least, treat as presumably a fair and just one. No evidence is offered to impeach their action, no suggestion is made that their award was not impartially and cautiously arrived at; not a line of testimony is offered to show that their award of benefit is not all the property was actually benefited by the improvements in question. It is submitted that such an objection thereto as that made by the prosecutors is not worthy of consideration at the hands of the court.

In the face of all the facts before the court in this case, if it were not for the representative counsel of the prosecutors, who brings this writ, I should feel that this proceeding was but another attempt of the Public Road Board to harass honest property owners along the avenues of Essex county, whose lands have been iniquitously assessed by this corporation far beyond their actual value, and without regard to benefits actually conferred, and which confiscating assessments the board have refused to settle and adjust by mutual compromise, with a view, solely, to keep up their decrepid corporate existence, long since made useless, in order that a few men may feed upon the taxpayers for a short period longer.

The law of 1882 is valid; the proceedings are regular; the amount fixed by the arbitrators is just, and should be sustained. The decision of the Supreme Court should be affirmed, with costs.

The opinion of the court was delivered by

PARKER, J.   To understand the questions involved in this cause, it will be necessary to state, somewhat in detail, the legislation on the subject.

"The Essex Public Road Board" was created by an act of the legislature, approved March 31st, 1869.   The object of the act was to create a body charged with the duty of constructing and maintaining a better class of public carriage roads in the county of Essex.

The *fifth* section of the act provides for the assessment of damages sustained by owners of lands taken for roads, and also for assessment upon other lands benefited by such roads.

The *fifteenth* section provides that the assessments laid for benefits shall be and remain liens upon the lands benefited until paid; and where the assessments are not paid, authority is given to the board to sell such lands at public sale to any person who will take it for the shortest period of time, not exceeding fifty years, and pay the full amount due on the assessment.

The section last named also enacts that the road board shall give to the purchaser of the lands a certificate of sale, describing the premises so sold, and the length of time for which they were purchased; and also contains the further provision that if at the end of three years from the day of sale the lands shall not have been redeemed, the board, upon surrender of said certificate, shall execute and deliver to the purchaser a declaration of sale of said lands, with the provision that the time for redeeming the same shall remain open (notwithstanding the term of three years may have expired) until the term for which the purchaser agreed to take the same shall be ended.

By a supplement, approved March 31st, 1875, it was pro-

vided that such lands as were not bid off, when offered at the original sale, or at a resale, when the first purchaser failed to comply, should be struck off to the road board by its corporate name, for the term of fifty years, and that it might be held and sold or assigned and disposed of by said board *for the use of the county*, with all the rights and privileges of a purchaser at such sale, and subject to the same conditions and limitations.

On the 31st day of March, 1882, an act was passed which gives power to compound, adjust and compromise any tax or assessment which may have been laid, or might thereafter be laid by virtue of the powers conferred by the acts concerning the road board, between the board and the owner or mortgagee of any land which may have been or thereafter might be taxed or assessed for benefits, and to discharge the land from the lien of such tax or assessment, upon payment of the sum agreed upon.

The said last-mentioned act also provides that in case of an application by any owner or mortgagee for an adjustment, with the road board, of any tax or assessment laid, and their failure to agree, or in case of neglect or refusal of the board to act upon the application, the owner or mortgagee who made the application to the board for adjustment may petition the justice of the Supreme Court who holds the Circuit Court of the county where the land lies, for the appointment of arbitrators to settle and adjust the matter in difference between the petitioner and the board.

The *third* section of the act last mentioned provides that the said justice of the Supreme Court, if in his discretion he deems it a proper case for arbitration, shall appoint arbitrators, who, after notice and hearing, shall fix and adjust a specific sum to be paid by the owner or mortgagee so petitioning, in full settlement and discharge of the tax or assessment; *provided*, that said act shall not apply to cases where the land had been sold for taxes or assessments and bought by a *bona fide* purchaser, other than the board or its representative.

The said act also requires that the arbitrators shall report

in writing to said justice of the Supreme Court, who will order it filed with the clerk of the county, and that upon service of a certified copy of such report on the road board, with the tender of the amount named therein, together with interest, to the board, it shall, by its proper officers, receipt the tax or assessment against such land in full and give a release and acquittance of the same from the lien of any such tax or assessment, and that the said land shall, by operation thereof, be freed, released and discharged from the lien and encumbrance thereof.

Under the act of 1882, Jacob Skinkle, the defendant in error, presented a petition to the justice of the Supreme Court who holds the Circuit Court of Essex county, asking for the appointment of arbitrators to settle and adjust the matter in difference between him and the Essex Public Road Board, in reference to certain assessments for benefits, which had been imposed on certain lands of his, under the act incorporating the Essex County Road Board and supplements thereto.

It appears by the petition that the title to the lands on which the assessments for benefits had been laid, at the time they were laid, and at the time the improvements were made, stood in the name of Caleb B. Headley, and that the said Jacob Skinkle held a mortgage thereon; and that subsequently (but before the filing of the petition) said Skinkle became the owner thereof by purchase, under foreclosure proceedings on his mortgage.

The petition of Skinkle states that he had applied in writing to the road board for an agreement and compromise of the assessments on said land, laid for benefits, and that said board had declined to entertain the same.

After presentation of the petition, duly verified, to the justice, and after testimony had been taken, the said justice certified to the Supreme Court for its advisory opinion, a number of questions of law, which had been raised before him, on the motion to appoint arbitrators. The Supreme Court heard argument upon the questions which had been certified, and returned to said justice its advisory opinion, in which the legal

position of the petitioner on all the questions certified was sustained. Whereupon the justice proceeded under the petition and appointed arbitrators to settle and adjust the matter, and to hear parties and their witnesses, and to fix the sum to be paid by the petitioner in full settlement and discharge of said assessments laid by the Essex Public Road Board upon said land.

The arbitrators reported that they fixed and adjusted a specific sum (naming the amount) to be paid by said Skinkle to the road board, in full settlement and discharge of the assessments which had been made on said land, in order to make said assessment conform in amount to the benefits conferred upon said property by the improvements. Upon coming in of the report the justice ordered it filed.

Then the road board, by writ of *certiorari*, brought all the proceedings to the Supreme Court, where it was decided that there was no error.

The writ of error to this court, therefore, brings before us all the questions which were raised before the justice and by him certified as aforesaid, as well as the legality of the action of the arbitrators in fixing the amount to be paid by the petitioner in discharge of the assessments on the lands.

Assuming the statute of 1882 to be constitutional, the action of the arbitrators was legal. It conformed to the statute in every respect.

Each land owner upon whose lands assessments for benefits had been laid, if unable to agree with the road board on a sum by way of adjustment and compromise, had the right to apply for arbitrators. In considering his application the arbitrators were not required to be governed by assessments which had been made at the instance of the road board on other lands. The statute requires the arbitrators to view only the land mentioned in the petition, upon which the assessment for benefits had been laid, and after hearing parties and witnesses, to take into consideration assessments on that land, and its value, in proportion to the assessments against it, in order to fix and adjust a sum to be paid by the petitioner in full settle-

ment of the lien on that land. The language is too plain to admit of doubt.

It is objected that the specific amount fixed by the arbitrators in their report in this case, is not, and does not purport to be equal to the whole benefit conferred, nor in proportion to the benefit conferred. The express words of the report furnish a sufficient answer to this objection. The following is the language used, viz.: "And we do hereby report and certify that we have so fixed said sum or amount after a careful examination of said land and said public improvements for which said assessments were laid, and the evidence before us, with a view to charge said property with and to make said assessments conform in amount to the benefits conferred, and do hereby determine that the benefits conferred upon said property by said improvements amount to the sum of $840."

The other questions before us for adjudication in this cause are those which were considered and passed upon by the Supreme Court before the appointment of the arbitrators, and are stated in the advisory opinion of said court before mentioned, to be found in 18 *Vroom* 93.

One of these questions is: What considerations are to guide the justice in deciding whether a proper case for arbitration is presented by the petitioner? The Supreme Court answered the question by holding that the petitioner must present to the justice such facts, duly verified, as show that he is entitled to relief under the act. In this case, the petition was accompanied by affidavits sustaining the facts alleged therein. It sets forth that said land had been assessed for benefits for opening and widening Springfield avenue, for extra paving thereon, and for change of grade on said avenue, in certain sums, which together amounted to $1935.14, without interest, and that the value of said land was not in excess of $1500. This made a case, not merely justifying the appointment of arbitrators, but requiring the justice, in the exercise of a reasonable discretion, to appoint them. The petitioner was not required to show more than a *prima facie* case to establish his right to the appointment of arbitrators; but he did more, and

proved by the depositions taken on a rule to show cause, before the appointment was made, that he was entitled to the relief provided by the act.

The plaintiffs in error, among other things, denied that the act of 1882 was retrospective in its character in respect to land sold before the act was passed. The Supreme Court advised the justice that it was retrospective. This is undoubtedly correct. The express language of the act settles it. The *first* section reads as follows, viz.: "It shall and may be lawful for any public road board to compound, adjust and compromise any tax or assessment *that may have been* or may hereafter be laid," &c. The remaining sections, which authorize the appointment of arbitrators and direct the mode of action, also refer to assessments *that may have been laid,* as well as to those which might thereafter be laid. The proviso at the end of the *third* section clearly shows that the provisions of the act apply where the land on which the assessment was laid had been sold to the road board, whether sold before or after its passage.

Another inquiry submitted to the Supreme Court for its advisory opinion was whether a mortgagee who had purchased the property covered by his mortgage, could apply for arbitrators. The act of 1882 settles that inquiry by expressly providing that the road board might adjust and settle the assessment with the owner *or mortgagee* of lands assessed for benefits, and in case of the neglect of the board to entertain the proposition for adjustment or failure to adjust and settle, then that the owner *or mortgagee* might petition for arbitrators. In this case, the petitioner, at the time of the improvements, of the assessments therefor, and the sale, was *mortgagee* of the land in question, and when the application for arbitrators was made he was *owner* of the land. There is no doubt that the petitioner, whether regarded as owner or mortgagee, was entitled to relief under the act.

Again, there is no imperfection in the act for want of providing a mode or principle to govern the arbitrators. The matter submitted to them for inquiry and settlement is very simple. The petitioner complains that the assessments which

had been laid on his land are greater in amount than the bene-
fits to be derived from the improvements, and he prays that
the assessments be reduced to a sum equal to the benefits.
Proof is taken as to the value and the arbitrators report in
accordance with proofs. If it appear that the land is not
worth as much as the amount of the assessments that had been
laid upon it, it follows that such assessments were erroneous.
There is no difficulty in carrying the act of 1882 into effect.

The questions so far considered have been answered upon
the hypothesis that the act of March 31st, 1882, is constitu-
tional. The plaintiffs in error attack its constitutionality, and
this is the important question in the cause; for if that act be
invalid, all the proceedings under it must fall, and the judg-
ment of the Supreme Court be reversed.

It is said that the title of the act of 1882 embraces more
than one object, and does not express the true object of the
law. The constitutional requirement in this respect is not
violated. All parts of the act have proper relation to each
other and to the title. *State* v. *Hammer*, 13 *Vroom* 438;
*Payne* v. *Mahon*, 15 *Vroom* 213.

It is further urged that the act is unconstitutional because
it assumes to provide a mode whereby land of the road board
may be taken from it without its consent, and by compulsion
and coercion transferred to another upon payment of a sum
fixed by arbitrators, in the selection of whom the board does
not participate. It is argued that such legislation impairs the
obligation of contracts, and it is styled in the argument a species
of robbery. Before acceding to this position, expressed in such
extreme language, it will be well to inquire if the road board
ever had any property right in the land, for which it held a
declaration of sale, which was beyond the power of the legisla-
ture to control.

While the Essex Public Road Board may be classed under
the general head of municipal corporations, the powers with
which it is invested are fewer and more restricted than those
which municipal corporations usually possess. It may prop-
erly be termed a *quasi* corporation, whose functions are wholly

of a public nature, and having corporate powers only for certain specified purposes. Such a corporation is a mere agent, employed as part of the machinery of government, to aid in carrying on a portion of its affairs of a local nature. It has no property, and cannot have, except provided by the law creating it or the supplements thereto. Under the original act it had no power to acquire and hold lands. It had authority only to order sale and transfer to purchasers, for the public, under and by virtue of unpaid assessments which had been laid for supposed benefits from proposed improvements. In 1875 power was given the board, in case others did not become purchasers, to take a declaration of sale in its corporate name, to hold and dispose of for the use of the county. The land did not become the property of the board, but its name was used for the sake of convenience, as the channel through which the public would pass title to any one who would subsequently purchase. The land was held in the corporate name of the board, as the property of the public, subject to the right of redemption during fifty years, and subject, also, to the control of the legislature.

Such corporations do not hold property thus entrusted to them as their property under contract, but by virtue of legislation, subject to all changes which the legislature may make. To constitute a contract there must be two contracting parties. In this case the government (acting through the legislature) and the road board were one and the same party. They did not and could not contract with themselves. If there was a contract in the act of 1882, it was between the government and the land owner, whose land had been assessed for benefits. By that act the government said to the land owner: "If you think the assessments on your land too high, you may apply for relief under its provisions." The land owner chooses to apply, and the application results in taking off part of the burthen, and releasing the land from the lien of the assessment. The government is bound, by the passage of the act, to the land owner who applies, and the land owner is bound, by accepting the act and proceeding under it. These are the

only parties interested.    The road board, being the mere agent
of one of the contracting parties, has no right to intervene as
an obstructionist, and raise the question of alleged violation
of the obligation of contracts, and the taking of property with-
out compensation.

The road board alone complains, and that body has no
vested right or interest in the premises, no right which is not
subordinate to the action of the government through the leg-
islature.    The legislature which brought the Essex Public
Road Board into being has the right to amend the acts affect-
ing it, in such manner and to such extent as the public inter-
ests may require.    The legislature may even annul all the
powers of the road board by repealing the law creating it, so
long as it does not interfere with individuals who purchase
*bona fide* under its provisions.

The act of 1882 was not only constitutional but wise legis-
lation.    So long as assessments greater in amount than the
value of the land on which they were imposed remained, the
owner would not redeem, nor could purchasers be found.
The consequence was that the public did not receive any part
of the assessments.    By providing a mode of adjustment be-
tween the government (through its agent, the road board) and
the land owner, the public is enabled to obtain a portion of
the money by discharging the land from the lien.

The rights of *bona fide* purchasers are not affected by the
act.    No constitutional right is violated, and the public is
benefited.    When the legislature found that a mistaken and
oppressive policy had been pursued, it was not only its right,
but its duty, to furnish a mode of relief.    At all events, the
road board has not such legal *status* as will authorize it to
intervene.

The views above expressed are supported by numerous
authorities.    The leading case on the subject is that of *Dar-
lington* v. *Mayor of New York*, 31 *N. Y.* 164.

The authorities cited on behalf of the plaintiffs in error on
the question of the constitutionality of the act concede the
general doctrine that the legislature may alter and even

abolish laws incorporating municipal incorporations, but maintain that in so doing property rights cannot be violated. Those authorities, so far as they refer to property rights, do not apply to this cause, because the road board did not have the right of property in the land in reference to which the arbitrators were called to act. They refer to cases where counties, cities or townships, having, by their charters, full power to acquire by purchase and to hold property, have exercised such power, usually in furnishing public buildings for governmental use. No case can be found which applies to the facts now before the court, where not a dollar has been paid for the land by or for the road board, but where the land in question was assessed for benefits, and because of non-payment thereof was transferred nominally to the agent for the use of the government.

There is no error in the rulings of the Supreme Court, and the judgment of that court is affirmed.

*For affirmance*—THE CHIEF JUSTICE, PARKER, REED, SCUDDER, CLEMENT, COLE, McGREGOR, WHITAKER. 8.

*For reversal*—DIXON, MAGIE, PATERSON. 3.